W. Ronald and Carol A. Kops v. Commissioner.
Kops v. Commissioner
Docket Nos. 3891-67 and 4739-67.
United States Tax Court
T.C. Memo 1968-107; 1968 Tax Ct. Memo LEXIS 190; 27 T.C.M. (CCH) 525; T.C.M. (RIA) 68107; June 6, 1968. Filed *190 W. Ronald Kops, pro se, 2 Horizon Rd., Fort Lee, N. J. Barry M. Mosebach, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiences in petitioners' income tax for the calendar years 1963 and 1964 in the amounts of $524.31 and $677.30, respectively. The only issue for decision is whether petitioners are entitled to dependency credit exemptions for each of W. Ronald Kops' three children in each of the calendar years 1963 and 1964. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, W. Ronald and Carol A. Kops, who resided at the time of the filing of each of the petitions in these cases in Fort Lee, New Jersey, filed joint Federal income tax returns for the calendar years 1963 and 1964 with the district director of internal revenue at Newark, New Jersey. 526 W. Ronald Kops (hereinafter referred to as petitioner) and Lenore Copland Kops were married on June 28, 1953. They had three children, Roy Kops, born on May 20, 1955, Kevin Kops, born on October 11, 1958, and Lisa Kops, born on April 26, 1960. Prior to 1962, petitioner and Lenore Copland Kops (hereinafter *191 referred to as Lenore) separated. On May 21, 1962, they entered into a separation agreement and later in that year were divorced and the separation agreement was incorporated into the divorce decree. The separation agreement provided for alimony payments by petitioner to Lenore of $220 a month so long as she did not remarry with the provision that for a limited period of time $75 a month might be deducted from the alimony payments as payment on an indebtedness. The separation agreement also provided that Lenore was to have custody of the children with certain visitation rights granted to petitioner, and that petitioner was to pay $60 per month per child to Lenore as child support. Petitioner was also obligated to pay college tuition for the children, to maintain an insurance policy in the face amount of $15,000 with the children designated as beneficiaries and to pay onehalf of any dental payments in excess of $100 per child. During the calendar years 1963 and 1964, the children were in the custody of and lived with Lenore. During the years 1963 and 1964, petitioner paid $180 per month child support for the children to Lenore, making a total payment for child support of $2,160 *192 in each year. In addition petitioner paid to Lenore $2,395 as alimony in 1953 and $2,640 as alimony in 1964. In addition to the payment of $2,160 as child support, petitioner in each of the calendar years 1963 and 1964 paid $26.20 additional to have the three children carried on his Blue Cross and Blue Shield Hospitalization insurance policy. He paid $90 as a premium on the $15,000 life insurance policy which he was required to carry for the children. He paid a total of $60 for such items as food and entertainment when he had all three children with him at the periods when he exercised his visitation privileges. He spent $20 for a birthday present and birthday entertainment for each child during each of the years 1963 and 1964 and spent $15 for each child for a Christmas present in each of the years 1963 and 1964. During the year 1963, Roy spent 3 weeks with petitioner and during the 3-week period petitioner spent $22 on food and $50 on clothing for Roy. Petitioner also had Roy with him overnight for several weekends during each of the years 1963 and 1964 and spent $30 during each of these years for the total number of weekends that Roy spent with him. During the year 1963 petitioner *193 spent $10 for clothes for Kevin and $30 for the weekends Kevin spent with him. During the year 1964 petitioner spent $10 for clothes for each Roy and Kevin and during the weekends that Roy and Kevin spent with him he spent $30 for each child. Petitioner's total payments of support for Roy, Kevin, and Lisa during the calendar year 1963 were $916, $854, and $813, respectively. During the calendar year 1964 petitioner spent a total in support of Roy and Kevin of $854 each and in support of Lisa he spent a total of $813. Lenore was employed during each of the years 1963 and 1964 as a counselor in a junior high school and during the summer worked at various temporary jobs. She received total compensation for her work of $8,385.94 in 1963 and slightly more in 1964. Lenore also had a small amount of income from interest and dividends. During the years 1963 and 1964 Lenore and her three children lived in the house which had been the home of petitioner and Lenore and the children prior to petitioner's separation from Lenore. All interest in this house had been granted to Lenore when she and petitioner were divorced, and during 1963 and 1964 Lenore owned the house, made the mortgage payments *194 due on the mortgage on the house, and paid for the upkeep of and repairs to the house. Petitioner and Lenore had purchased the house in 1956 for $16,150 and had added a maid's room and both and a storage room to the house after acquiring it. The house is a brick, split-level house. On the entrance level it has a living room and dining area and a kitchen. On the level below the entrance level it has a recreation room and bathroom and a laundry room. On the level above the entrance level it has three bedrooms and a bathroom. There are the room and bath and storage room at the basement level which had been added after the house was purchased. The basement level bedroom and bath were living quarters for the mother's helper employed by Lenore. The house was well furnished in 527 contemporary style. During the years 1963 and 1964 the fair rental value of the house furnished was $225 a month. The cost of heating the house was $263 in 1963 and $273 in 1964, and the cost of electricity for the house was $211 in 1963 and $277 in 1964. Lenore employed a mother's helper during each of the years 1963 and 1964. The total cash wages which she paid to the mother's helper during each of these *195 years were $1,500. In addition, Lenore paid social security taxes of $108 in each year for the mother's helper and furnished her with the room and bath built for the use of a mother's helper and with food. The mother's helper did some of the cleaning and some of the cooking but spent the major portion of her time caring for the three children. During 1963 and 1964 Lenore purchased the groceries for herself, the mother's helper and the three children. In 1963 Lenore paid $135 for nursery school for Lisa and $345 for nursery school and camp for Kevin. In 1963 Lenore paid $195 for camp for Roy and $160 of doctor bills for Roy. During 1963 Lenore paid $30 in doctor bills for Kevin and $43 for drugs for Kevin. During 1964 Lenore paid $65 for nursery school for Lisa and $281 for camp for Roy. In addition to these payments Lenore carried medical insurance for herself and the three children. She paid telephone bills of $236 and $203 in 1963 and 1964, respectively, and she paid dental bills of $330 in 1963 and $242 in 1964, of which $45 in each of the years 1963 and 1964 was for the three children. She also purchased clothing for the children in 1963 and 1964 and spent sums for their entertainment, *196 religious education, school lunches, and miscellaneous needs. During the year 1963 the total amount expended for Roy's support was at least $2,100; the total amount expended for Kevin's support was at least $2,050; and the total amount expended for Lisa's support was at least $1,900. During the calendar year 1964, the total amount spent for Roy's support was at least $2,000; the total amount spent for Kevin's support was at least $1,900; and the total amount spent for Lisa's support was at least $1,800. Ultimate Fact Petitioner did not contribute more than one-half of the support of any one of his three children in either the calendar year 1963 or 1964. Opinion The issue here is purely factual. We have taken petitioner's estimate of what he spent in support of each of his three children as he made it. We have considered the entire testimony in arriving at the total support of the children. Petitioner estimated the rental value of the house in which Lenore and the three children lived as $180 per month unfurnished in each of the years here in issue. Lenore estimated the rental value at $225 per month furnished. The two estimates are reasonably close, and having considered *197 the testimony as a whole including the type of house, where it was located, Lenore's knowledge of other houses in the area which were rented furnished and their rental value, we have accepted her estimate of the rental value of the house furnished. The amount for utilities was agreed to by the parties, the only difference between the parties being as to whether any portion of the cost of the telephone bill should be allocated to the children and if so, how much. It is, however, apparent that if the rental value of the house of $2,700 a year is added to the agreed payment for heating the home and for electricity totaling $474 in 1963 and $550 in 1964, the result is $3,174 rent and utilities other than telephone in 1963 and $3,250 for these items in 1964. The house was occupied by Lenore and her three children and a mother's helper. However, since we conclude that threefourths of the time of the mother's helper was spent in caring for the children and only one-fourth in other activities, the portion of the rental value of the house which is applicable to the room furnished to the mother's helper would be allocated three-fourths to the children and one-fourth to Lenore. If the total *198 of the rental value of the house plus the cost of heat and electricity is allocated one-fourth to each of the three children, the result is approximately $800 a year for shelter for each child. Likewise, the food of the mother's helper would be allocated not only to Lenore but partially to the children, and we have concluded that the proper allocation of the cost of food for each of the children is at least $475. Lenore testified that she spent during each of the years here in issue $3,120 for groceries. Petitioner testified that during 1960 he and Lenore spent between $25 and $30 a week for groceries for their household. He estimated the cost of food for a 3-year-old girl at $4.13 a week, the cost of food for a 5- or 6-year-old boy at $6.25 a 528 week and the cost of food for a 9-year-old boy at $7.46 a week in the years 1963 and 1964. The allocation we have made to each child includes that child's allocable portion of the food consumed by the mother's helper. We have allocated one-fourth of the wages plus the social security tax paid for the mother's helper to each child, thereby allocating $400 for these items to each child. To this we have added the direct payments made for *199 each child such as nursery schools, camps, and doctor bills which were identified, and have used an estimated amount for clothing and such incidental expenses as payments for education, religious education, and any entertainment Lenore provided for the children. At the trial Lenore produced numerous checks in payment of bills to various stores for clothing. However, there was no allocation on these bills to the various children or to Lenore, herself. We agree with petitioner that not much of the total expense of the telephone is allocable to the children, but certainly some benefit from the telephone was derived by children of the ages of petitioner's three children during the years here in issue. Also there were incidental expenses such as transportation and books which we have not considered. Because of the necessity for estimates, we have stated that the figures we have given are a minimum or that the total support was in at least the amount given. From the evidence it is highly probable that the total support of each of the children was greater than the total amount we have found to be the minimum total support for each of the children in each of the years here in issue. The *200 cost of food for the two boys including one-fourth of the cost of the food of the mother's helper as being allocated to each is on the lower side of petitioner's estimate of food costs for each boy. We have considered Lenore's available means and her testimony in general in reaching our conclusion of the minimum amount of total support for each of the children. We have concluded that petitioner paid less than onehalf of the total support of each of the children in each of the years here in issue based on all of the evidence of record. Decisions will be entered for respondent.